Number 241620, Bicall Corporation v. FII USA Inc., Edo. Will Attorney for Appellants please introduce yourself on the record to begin? Good morning, Your Honors. Mark Cernel on behalf of Appellants. And I'd like to reserve three minutes rebuttal, please. You have three minutes. May it please the Court. This appeal involves a district court's grant of the extraordinary remedy of a preliminary injunction to halt a foreign arbitration proceeding, despite directly applicable statutory authority that barred the district court's action. An overwhelming precedent that comedy of consideration further precluded that extraterritorial relief. Beyond these two threshold issues and errors, the district court further erred in its assessment of the merits of the underlying purchase orders and contract formation, and also with respect to finding per se irreparable harm. Without any specific findings or analysis to justify its conclusion that this necessary element was met. Now, I'd first like to start with the threshold issues and note that there's a disconnect between the district court's rationales and the arguments provided by Vicor to uphold the bottom line result. Appellee principally relies on arguments the district court in fact rejected, and makes little effort to defend the district court's actual rationales in finding the relief. So first let me start with the statutory language, 1659. The statute 1659 is entitled stay of certain actions pending disposition of related proceedings before the United States International Trade Commission. And the statute specifically says that a respondent or a defendant in a commission action can request that the district court stay the action and the district court shall stay until the determination of the commission becomes final, proceedings in the civil action. That's what happened in the Texas federal court, correct? Correct, correct. And so we had a parallel district court case filed in Texas. The request for stay was made, and pursuant to the statute, it was stayed. There was a separate then action filed here in the District of Massachusetts, and the same result should have happened. Went once- So it should have been stayed in the District of Massachusetts, nothing happened. Absolutely, once you find that the statute applies, which it clearly does here, because we have claims that involve the same issues that are presented in the commission proceedings. The edict is then, it's a mandatory stay, shall stay. There's no discretion to avoid stay once the statute applies. The district court here focused on the proceedings term in the statute, right? And concluded that it didn't have to stay every action in the case. It couldn't go ahead and issue a final ruling in this case, but that it wasn't violating the statute by issuing a preliminary injunction. So, like you said, it found that it was the same claims that raised the same issues, but it thought the word proceedings let it issue preliminary relief. Are there any cases that support that specific construction of the statute? I'm not aware of any cases that support the district court's approach here. Where the district court found that the statute did apply, and then evaded the mandatory stay by finding that somehow there was proceedings. But here, obviously, what happened was the proceedings proceeded with respect to the claims that involved the same issues as presented in the commission. And we can look at that, if you look at A13 to 15 in the record, the three claims presented here relate to arbitration and license issues. And those same exact issues have been litigated in the commission proceedings. I'd refer you to the record A748, A754, and 55. And you can tell that that's the case, because what happened here was every time the district court entered a ruling, we had VICOR running to the ITC to present them with that ruling and try to use that ruling to influence the proceedings in the commission. So very clearly. Did the ITC sanction the arbitration that was going on before the CIETAC? I don't think the commission has any role to play in sanctioning an arbitration anywhere. Okay, so the effect of the district court order was to bar the arbitration. Correct. So how did it prevent the commission from furthering its responsibility? So the district court didn't get in the way, the commission is plowing ahead and that is not being impacted. The point here is that the whole purpose of the statute is to give respondents the ability to request a stay of the district court proceedings so that you don't have to fight at the commission and deal with the district court proceeding in parallel. But the commission did address your arbitration claim, didn't it? Didn't it say that your client had waited too long to request arbitration and therefore it was not going to permit you to pursue arbitration, it was going to go ahead with its decision making process, correct? That is correct. That we moved to terminate the commission proceeding in favor of arbitration and that was denied. Correct. Because your client waited too long. So how is comedy impacted when it is only the arbitration that is primarily stayed? So comedy is impacted because what we have here is. But doesn't it respect the commission's decision which is arbitration isn't appropriate because you waited too long? So let me take a step back. First of all, commission proceedings and commission decisions, findings of fact, conclusions of law are not binding on any district court proceeding. And so the way this will typically play out and it will eventually play out here is once the commission proceedings are done and final, not appealable anymore, the district court case in Texas will be unstayed and all of these issues will be presented to the district court in Texas including arbitration, including license and presumably they will be timely raised there and dealt with substantively there. That's sort of the interesting thing here is there was a suggestion by the district court of Massachusetts that there's a need to preserve authority or jurisdiction to do something in the future. But, you know, the way this is going to play out is there's really no substantive role for the district of Massachusetts to play now or in the future because all of these issues substantively are already in front of the Texas court. But counsel, I think one of the things I'm struggling with is your argument to us on appeal is that everything should be allowed to proceed in the commission under, you know, sort of the normal, in the normal course and then whatever happens afterwards will happen. But it's your client that tried to arguably disrupt that by going ahead and filing arbitration during the commission proceedings. So aren't you sort of making both sides of the argument? The purpose of the statute is to protect respondents. It's a tradeoff that Vicor and the complainants make. They choose the benefits of the ITC proceeding, live with the tradeoff of not being able to seek relief in district court. When you're sued in the ITC, one defense that's specifically allowed is to claim, hey, these issues should be arbitrated and that's what we did. But the defense was rejected by the commission because you hadn't, your client hadn't brought it up quickly enough. But again, it was rejected on a basis of waiver and we attempted, you know, you can still proceed with the arbitration. It's just we can't stop the ITC proceeding from moving forward. And it in fact has moved forward. And so. Isn't the district court here in Massachusetts basically, the ITC has an adverse ruling against the arbitration. As you said, ITC can't do anything to stop it. Why can't the district judge then do that? And then basically what else is going on in Massachusetts? Probably nothing else at this time. It's just going to be the ITC now. So two reasons. One, there's a mandatory stay. The statute says you can't seek relief from a district court proceeding while the commission proceeding is going on. Shall means shall. Stay means stay. It's an abusive discretion to issue a stay. But then like nobody, if the district court had to stay the case as of day one, then the arbitration would still be ongoing, correct? Correct. Secondly. But how does the district court's order impact what's going on before the commission? It does not. I mean, other than the fact that they've attempted to use the substantive rulings of the district court on the same issues to try to influence the ALJ and the ITC proceeding. So how is comedy impacted? Comedy is not impacted by the interplay between the commission and the district court. That's implicated by the fact that we're halting a foreign arbitration proceeding. And the quack case from this. But it's private arbitration. How is comedy impacted when there's private arbitration? It may be foreign, but it's still private arbitration. It's not governmental. The Supreme Court in Mitsubishi tells us that comedy considerations are implicated by foreign private arbitration. That's the Mitsubishi Motors v. Solar Chrysler case. Also, the Marock Fruit Board case, applying quack, which is this court's specific case on comedy, applied it to arbitration. And in that specific case, it talked about a London arbitration. And thinking about the arms race that's implicated where, okay, we're going to run to the foreign court and seek an anti-suit injunction there. And trying to avoid the situation. And Mitsubishi wasn't, I mean, there was no dispute that the parties had agreed to arbitration, was there? In Mitsubishi, I believe at least some of the issues were subject to an agreement to arbitrate. And that's not the case here. That's, certainly they're contesting whether arbitration's appropriate. And again, the issues pursuant to the purchase order terms are that the issue of arbitrability is to be decided by the arbitrator. But Counselor, your position is that there's nothing unusual in having a commission proceeding and the rule against your client saying that you waited too long to raise arbitration so you can't terminate the commission proceeding. But you're saying there's nothing unusual to have a commission proceeding and an arbitration proceeding simultaneously? Is that your position? Absolutely. And in fact, Quack tells us there's a presumption in favor of concurrent proceedings. The presumption is we allow a concurrent proceeding in a foreign tribunal, foreign arbitration tribunal, to proceed concurrently. And the issue is then. But Quack was about a foreign court, wasn't it? Quack was about a foreign court. Again, Mitsubishi tells us, Supreme Court authority tells us you applied to arbitration as well. Merak Fruit applied to Quack in the context of arbitration and says that the presumption is allow them to go concurrently in parallel, deal with them at the enforcement stage if there's an issue there. If there was agreement to arbitrate. There was, I think, in Mitsubishi. Right. But again, in other courts and in fact. And arbitrability is decided by the arbitrator if there's an agreement to allow the arbitrator to allow, I mean, to dissent arbitrability. And we would certainly suggest that there was such an agreement pursuant to the purchase order terms. And key from Quack is it tells us when that presumption is going to be rebutted. And that is only in the situation where you have what's called an interdictory type of situation where something that's going to happen in the foreign tribunal is going to somehow disrupt what the U.S. court might be able to do. Here we have no, nothing in the record, no suggestion there's any such issue being presented in Quack. It was the Belgian court was threatening significant financial penalties if there was compliance with U.S. discovery order. So getting in the way of the U.S. court. Here we have nothing like that. And so the presumption would hold pursuant to Quack and Mitsubishi and suggest that these should be proceeding in parallel. Let me ask you a question also. When you have an arbitration, let's assume there's a ruling in your favor, you still have to go to court to enforce that ruling. Absolutely. And that's what Mitsubishi tells us. In Mitsubishi, there was Sherman Act claims. So we had a foreign arbitrator dealing with U.S. antitrust laws. And in Mitsubishi, the decision was let's allow that to proceed. Japanese arbitrator is going to deal with Sherman Act claims. And we can always deal with it on the back end in the enforcement stage of the, you know, enforcing the award. That's what the Supreme Court tells us to do is don't block it on the front end. Don't stop a foreign proceeding. Comedy suggests. Allow it to proceed. And there's always that check on the back end to deal with it. Okay. Thank you. You have your ball. Thank you. Thank you, counsel. Will attorney for Apley please come up and introduce yourself on the record to begin? Thank you, Your Honor. Lawrence Kolodny on behalf of the Pele-Vicor Corporation. May it please the court. Vicor brought this action under the Federal Arbitration Act and Massachusetts law to enjoin Foxconn from proceeding with a private arbitration to which Vicor never consented. After reviewing extensive evidence, the district court agreed with Vicor and found that there was no agreement to arbitrate and that Vicor would suffer irreparable harm if the arbitration went forward. Accordingly, it enjoined Foxconn from proceeding first through a TRO and later through a preliminary injunction of equal scope. The district court's findings were not clearly erroneous and its grant of injunctive relief should therefore be, was therefore not an abuse of discretion and should be upheld. I'd like to address the statute. Why wasn't the district court's order here in violation of the plain text of 1659? Your Honor, plain text of 1659 says that the stay applies or the stay, if it's asked for, applies to a proceeding in which a parallel, a district court proceeding which has the same issues as the ITC case. And the district court here concluded they were the same issues. So as opposing counsel said, you're arguing the theory that. I think the district court interpreted the statute to mean that if there were any overlapping issues, and in this case there was an overlapping issue, namely whether there was an agreement to arbitrate, that was sufficient. Our position is that the statute. Counsel, just to clarify, the district court rejected the argument that you're making right now. The district court did reject that argument and we respectfully disagree with the district court's conclusion. Now, the purpose, I heard my brother talk repeatedly about the purpose of the statute is to vaguely protect respondents at the ITC. That is not the purpose of the statute. The purpose of the statute is spelled out explicitly in the committee report that accompanied its enactment. The statute was enacted as part of the Uruguay Round Amendments Act, as part of the implementation of a trade agreement. And the purpose of the statute was to implement so-called national treatment rules in connection with the enforcement of intellectual property laws. I'm sorry, counsel, you were getting ready to tell us why the plain text does not apply and then you got sidetracked. Yes, Your Honor. So the plain text says that the district court proceedings that are covered by the statute are those with the same issues as the claim. It has to be a claim at the ITC, but it has the same issues as the claim before the district court. The statute did not say some of the same issues or any of the same issues or overlapping issues. It said the same issues. And if you take that literally, then the claims have to be identical before the ITC and the district court. For reasons having to do with the peculiarities of ITC law, that can never be the case because ITC cases require something called domestic industry proof, which district court cases don't require for patent infringement. And district court cases, of course, can award damages, which ITC cases cannot. Counsel, if I can just focus you on the exact language of the statute. It says that the district court shall stay until the commission determination becomes final. Proceedings in the civil action with respect to any claim that involves the same issues involved in the proceeding before the commission. And it seems that the litigation here in the District of Massachusetts is focused on whether there was a license involved. And that absolutely involves the same issues that are being considered in the commission proceeding. I don't understand how it doesn't. Can you explain that? I respect for your honor, I would say that it involves a common issue. It does not involve the same issue. But it doesn't, it's any claim that involves the same issue. So they have to issue a stay of proceedings in the civil action with respect to any claim that involves the same issues. That's right. So if you have a claim at the ITC and you have a claim in the district court and they involve the same issues, such as the prototypical example is, you have a patent infringement case at the ITC. You're asserting infringement of XYZ patent by defendant A. And then you bring, as has been done in the Texas case, in this context, a claim that XYZ patent is infringed by defendant A in the district court. Nobody disputes that district court case is subject to the stay provision. And in the 30 years. But both of these cases involve the question of whether there was a license. I'm sorry, the commission proceeding and the District of Massachusetts case involves whether there's a license. So how, under the plain text, is there not a claim that involves the same issues if both proceedings involve the license? Well, Your Honor, I would say we have to carefully parse the statutory language. The statute uses the definite article the, doesn't say a or any or some. And it also says issues. So when you say the same issues, in that statutory context, I think that the implication is that the entirety of the issues are the same.  And I think if you- But you're leaving at the beginning. You're leaving out the any claim that involves the same issues. That's right, Your Honor. Any claim meaning a cause of action. So, for example, one of the cases we cited was the Sandus case, which is a district court case, I believe from Iowa, in which there were multiple patents asserted in the Sandus case, only some of which were before the ITC. And the only claims that were stayed pursuant to the statute were the claims that involved those patents that were before the ITC. The other patent infringement claims before the district court were not subject to the 1659 stay. They were subject to a discretionary stay. But the meaning of claim in this context is cause of action. And so the cause of action in the ITC is patent infringement. The cause of action in the district court is patent infringement. And in the 30 years since this statute has been enacted, that is the only fact scenario that this has ever been applied in. This is the first case we have, Foxconn has not been able to find a case. We have not been able to find a case in which a stay was applied in a cause of action in the district court that was not a parallel enforcement proceeding with the ITC. And that is clearly, if you read the statutory history at A702, there is no doubt that that was the intent of Congress in enacting this statute. The statutory history says the new section requires a district court hearing and infringement case to stay the proceedings at the request of the respondent. And the reason why is because it needs to address the possibility that infringement proceedings may be brought against imported goods in two forums at the same time. Entire reason for this statute is because under the World Trade Organization rules, you can't put foreign litigants at a disadvantage relative to domestic litigants when enforcing intellectual property rights. Because of the ITC only allows domestic parties to bring cases, you have the possibility of a two-front war against a single defendant with the ITC and the district court both having infringement cases. And the statute says, well, if you're going to do that, you have to wait for the ITC case to be done before the district court case can go forward because you're going to get damages in the district court case. Well, is there anything that was before the district court in this proceeding that you think should have been stayed? Well, I believe that, no, I think the answer is no. None of the causes of action of the district court were infringement enforcement actions and therefore under the statute and the intent of the statute, there was no congressional intent to prevent VICOR from having access to the district courts. The effect of Foxconn's reading here of the statute is that VICOR could never get an injunction against this arbitration as long as they pled arbitration as a defense of the ITC. And so the arbitration would go forward, the statutory protections afforded by the Massachusetts statute and the FAA would be lost simply because Foxconn cleverly pleaded an arbitration defense at the ITC. I don't think that's the intent of the statute and it's a perverse result of that reading of the statute. And I think the proper reading and the way the statute has been applied for 30 years has been if you bring a parallel enforcement action in the district court, it gets stayed until the enforcement action of the ITC is complete. How is the declaratory judgment part of the district court action different from infringement enforcement? Because the declaratory judgment action did not seek a judgment of infringement. It did not claim that any patent was infringed and the result of it would not result in an infringement finding or for that matter a finding of validity of the patents. But isn't it seeking to eliminate their defense, the license defense? Well, your honor, for the purposes of this appeal, I don't think I need to defend whether or not the declaratory judgment actions are stated. I'm not even sure they're on this appeal because those were not injunctions. Because they're arguing that everything that happened in the district court should have been stayed based upon this federal statute. And you're saying that it's inapplicable because the federal statute wasn't intended to apply to these kinds of cases. Well, your honor, I'm arguing that with respect to the cause of action under the Federal Arbitration Act and Chapter 251, Section 2, which explicitly provides VICOR with the remedy of an injunction against an unagreed to arbitration, that cause of action is not subject to 1659. And if it was subject to 1659, it would effectively prevent VICOR from ever getting relief afforded by the statute. Because the arbitration is going to go forward in China if the stay is, if the injunction is vacated. And that is independent of anything that's going on at the ITC. The ITC case is concluded. It's now on review by the commission. And this is a separate cause of action. This is protecting VICOR's right not to be forced to arbitrate. It has no bearing on the outcome of the ITC case whatsoever. Counsel, I just want one more time to just turn to the statutory language. Because, again, it says the district court shall stay proceedings in the civil action with respect to any claim that involves the same issues. But what you're arguing is that we should read the statute to say proceedings in the civil action with respect to the same claim. No, your honor, I'm. That seems to be exactly what you're arguing. Because it's any claim that involves the same issues. And the claims that were brought in the District of Massachusetts end up involving the same issues, which is the license. So to be clear, the claims within the meaning of the statute, and I think the legislative history bears it out, are causes of action. The cause of action that we brought that's at issue in this appeal is. If it required the same cause of action, then what was the point of that involves the same issues? The statute could have simply read, you have to stay proceedings in the civil action with respect to the same cause of action involved in the. Well, because the causes of action in the ITC and the district court are never literally identical because of these peculiarities I mentioned earlier. There's a patent infringement claim at the ITC. There's a patent infringement claim in the Texas case, for example. Those are not identical in the sense that in the ITC, you have to prove domestic industry. In the district court case, you have to prove damages. But they have the core issues in both claims are the same, namely, is the patent infringed and is the patent valid? So you're saying because they could never be exactly the same, that's why Congress drafted the statute? Yes, and I think if you look at the legislative history, the clear intent was to specifically address the scenario of parallel enforcement actions and the use of the language, the same issues, as opposed to any of the same issues or some of the same issues or overlapping issues or common issues. If Congress wanted the statute to be that broad to cover district court cases totally unrelated to patent enforcement or other intellectual property enforcement, it could have said so. But the use of this definite article, the, when read in light of the legislative history, which clearly unambiguously says this is about parallel patent enforcement actions, I think leads you to the conclusion that the statute does not apply here. Okay, thank you. Any other questions? Okay, thank you. Thank you, counsel. Will attorney for the appellant please reintroduce yourself on the record? You have a three minute rebuttal. Mark Cernel for appellants. Real quickly with respect to the statutory language, we think the statutory language is absolutely clear. The district court, in fact, found it clear and that the claims here fell squarely within the statutory language. If you're going to get beyond the statutory language to the Uruguay round amendments legislative history, you can look at A702, and it specifically refers to patent claims, patent infringement proceedings, validity, and defenses. And very clearly here, what we're talking about are defenses. In fact, defenses that will be raised in the Texas district court case once that case gets unstayed. The oddity that's involved here is the fact that we have, first, the district court case in Texas that was stayed pursuant to the statute. And then because they couldn't raise them there, they had to start a new case. And that's the reason why this is sort of peeled off from a normal parallel patent infringement proceeding. Counsel, quickly mention- I'm sorry, could you just, just a couple of points of clarification, please? Has anything happened in the arbitration over there? It was stayed, like it had started, a notice had been sent out. They were, you know, asking for, I think, you know, the initial disclosures. All right, so it's in its infancy. So basically nothing. It's in its infancy. Correct. And the Texas case, is it clear that the Texas court, were it not for the state, would have jurisdiction over these proceedings? So, I believe so. Again, that hasn't been played out yet. But certainly, these are defenses that will be raised in the Texas case once that gets unstayed. Yeah, but what is Texas's interest in this proceeding? Well, Vicor filed the patent infringement claims in Texas. And so- Right, I understand that. Right. People can file anywhere. But what is Texas's interest in this case, other than that somebody went into their jurisdiction and filed? In other words, Massachusetts has an interest because the corporations, some of the corporations are mass corporations.  Are any of the corporations involved here Texas corporations? Vicor is the Massachusetts corporation. They're the ones that chose to file the patent case in Texas. So that's their choice. And presumably they think they've got jurisdiction over us down there. I don't think that's been litigated yet. Okay. But that was their choice as a Massachusetts company to choose to file in Texas. Okay. Then that case was stayed and then this case was subsequently filed. The Sandus case that counsel briefly mentioned, in that case, again, where we had the same patents like we have here, that was found to be subject to the mandatory stay. I'd like to further point out, in terms of the arbitration and Judge Thompson's question before, that's just an ALJ ruling that has been waived. And so ALJ decisions then go to commission review. That's currently being undertaken right now. And so we don't have a commission decision that the arbitration issue was waived. And certainly we then have appeal rights as well. So that's sort of an interim ruling at this point. Counsel, what about this, the argument that in 30 years there's never been a case like this? Always the state provision has been applied just to parallel enforcement proceedings. Is that correct? I believe so. And again, I would suggest the only reason we have the unique situation here is because of Vicor's actions to try to evade the stay that's already in place in  To file a second case, district court case, to evade the stay they're already under in Texas to seek the relief they're seeking. But there just isn't another decision that's looking at something other than a parallel enforcement proceeding. Correct. Although it goes beyond, there are cases that I think have gotten into beyond patent infringement to trade secret and other, the Viking case is one that comes to mind. And so based on, again, the directly applicable statute, Prinko, the federal circuit case tells us that when the statute applies, the answer is that all actions the district court took must be set aside, including the preliminary injunction here. And that's the relief we would seek. Thank you very much. Thank you. Thank you, Counsel. That concludes arguments in this case.